FILED

NOV 21 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Michelle A. McCray
1705 Seaton Street NW
Washington, DC 20009
(202) 588-0667 Phone

v.

David Kohlasch
Paul Christman
Flik International
800 Florida Avenue NE
Washington, DC 20002
(202) 651-6100 Phone

CASE NUMBER 1:05CV02264

JUDGE: Royce C. Lamberth

DECK TYPE: Employment Discrimination

21
DATE STAMP: 11/[redacted]/2005

JURY ACTION

## Complaint

Comes now the Plaintiff, Michelle A. McCray through herself and states to the court as follows:

Jurisdiction is based upon the authority granted to the court by the laws of the District of Columbia specifically Title VII of the civil rights act of 1964, as amended, 42 U.S.C. 2000e et seq.

Venue is proper in this court because the employer Flik International is located in the District of Columbia at 800 Florida Avenue NE Washington, DC 20002. Flik International is a contracted management company providing services to companies throughout the United States.

Defendants in this complaint are David Kohlasch General Manager (Caucasian) and Paul Christman Controller (Caucasian). Plaintiff is an African American Woman that worked directly under both defendants.

Plaintiff began working with Defendants at Flik International on August 6, 2003 as an Administrative Assistant with a salary of $26,000.00/yr.

Plaintiff was terminated on January 27, 2004. Defendant stated to Plaintiff they are going to restructure Plaintiff's position and make it solely an Accounting Position. Plaintiff is not being reconsidered for the position because Defendants believes that Plaintiff no longer wanted to work with the company, and Plaintiff job performance was not satisfactory.

Plaintiff was subjected to discriminatory instances and wrongful termination based on race.

On December 4, 2005 Plaintiff was involved in a dispute between a Caucasian co-worker Kelly Carragher in reference to assisting with a laminator machine. Kelly's supervisor informed Plaintiff that he wanted her to help Kelly learn how to use a laminator machine. Plaintiff informed Kelly's supervisor that she herself did not know how to operate the machine. Supervisor indicated Kelly and Plaintiff could learn together. Kelly came to Plaintiff and informed her that she was supposed to assist her with learning the machine. Plaintiff informed Kelly she was not sure how to operate the machine. The conversation

went on for a couple of minutes between Kelly and Plaintiff concerning the laminator machine. After minutes of a heated discussion Kelly walked away and the defendant David Kohlasch asked Kelly her side of the story. Kelly was asked to place her side (in which the facts were fabricated) in a statement. See attached Kelly's statement hereto as Exhibit A. See write up attached hereto as Exhibit B. Plaintiff has assisted Kelly and other employees with duties that she has knowledge, of how to handle and or operate. The very next day Plaintiff was called into a meeting with David Kohlasch General Manager (Caucasian), Paul Christman Controller (Caucasian) and Said Elkhodary District Operations Manager (Caucasian) and was given a write up for insubordination, failure to perform reasonable duties when assigned, unprofessional conduct, and performance which does not meet the requirements of the position. Plaintiff was never asked her side nor to place it in a statement for review.

After Plaintiff was terminated on January 27, 2004 exactly 7 business days from Plaintiff's termination a Caucasian co-worker Hala Younes was transferred into Plaintiff's position see attached change of status form hereto as Exhibit C. Hala as a Caucasian woman has a management title with the exact same duties as Plaintiff see attached memo hereto as Exhibit D for duties, and as a Caucasian woman she receives more pay $30,000.00 plus/yr. Whereas Plaintiff as an African American woman duties where the same as Hala's see attached job description hereto as Exhibit E but was paid $26,000.00/yr with an Administrative Assistant title. When Plaintiff interviewed for the position David informed Plaintiff that there is a one year commitment in the position before moving into another one. Hala Younes worked as a Front Desk Manager for 3

months before moving into Plaintiff's position. Hala Younes was not qualified for the Front Desk Manager Position and was not qualified for the Accounting Manager position see attached letter from Hala's immediate Supervisor Tongii Kelly Front Office Manager hereto as Exhibit F.

On October 3, 2003 Plaintiff received what the Defendant Paul Christman referred to as a 60 day evaluation. Paul informed Plaintiff that everyone was receiving one but later found out that no one else did, see attached list of employees who received evaluation hereto as Exhibit G. This evaluation consisted of fabrications in which the Plaintiff has clear evidence see 60 day evaluation attached hereto as Exhibit H. After the evaluation Plaintiff filed a complaint with the Human Resources Department with Flik International because of the content of the evaluation. The Human Resources Manager met separately with Plaintiff then with Defendants (Paul and David) regarding complaint. The outcome of the complaint was that regularly there is no 60 day evaluation that the company gives, only yearly, the communication between Plaintiff and Defendants should improve, and over the next 30 days another evaluation will be given to report progress. Plaintiff did not agree with the outcome of the investigation because Defendants were completely in the wrong and fabricated the truth. After meeting with Human Resources Manager it was said to evaluate Plaintiff within 30 days to report progress. Plaintiff never received 30 day evaluation. See recap of meeting from Human Resources Manager Erik Buckholz attached hereto as Exhibit I.

On January 26, 2004 Defendant Paul Christman who Plaintiff assists hired a temporary worker to assist him with accounting duties. These duties are outlined in Plaintiff's job description see attached job description hereto as Exhibit E. See attached reason for temporary worker Suzanne Duncan to work with Paul hereto as Exhibit D from David Kohlasch General Manager. Defendant Paul Christman was teaching Suzanne duties he never showed Plaintiff.

Plaintiff is a graduate of the University of Maryland Eastern Shore with a Bachelor's of Science Degree in the Accredited Hotel and Restaurant Management Department. Plaintiff was more than qualified to handle the position, and was exceeding expectations and had every intention on moving along in the company. Plaintiff received recognition for her work while employed with Flik International by General Manager, co-workers, senior staff etc, see attached email, card and stars from the star program recognizing Plaintiff's work. An email from Tongii Kelly Front Office Manager thanking Plaintiff for always wanting to assist when needed, and a star for assisting the front desk. A card from Tyra Marshall Senior Sales Manager thanking Plaintiff for assisting her with duties while she was out of the office. Two stars from Rhonda Blake Director of Sales (1) For Great People, and (2) For Great Service. Another star for assisting Gary Overton's Conference Services Staff. See recognition's attached hereto as Exhibit J, including a note from David Kohlasch General Manager declaring how good a job Plaintiff is doing.

In Conclusion: There was no reason for Plaintiff's position to be terminated. Defendants intentionally mistreated Plaintiff for discriminatory reasons. Defendants actions where

intentional because of the constant disparate treatment. Disparate treatment in the matter of Kelly having the chance to discuss the dispute with Defendants on December 4, 2003 in which Plaintiff never received that option. Plaintiff received a write up for a dispute with Kelly who never received one. Defendants took it upon their selves to willfully write Plaintiff up with harsh allegations without hearing Plaintiff's side of what took place. Hala being able to move into another position only having been with the company for just 3 months. While Plaintiff was told there was a one-year commitment in position before moving into another one. Therefore the two positions that became available that Plaintiff was very interested in Plaintiff could not apply for. Plaintiff was terminated and replaced by Hala who was given the same exact duties as Plaintiff but Hala received more pay. Defendant Paul Christman teaching Suzanne Duncan Plaintiff's duties while Plaintiff was employed with Flik, which demonstrates malice and shows no respect for Plaintiff. Flik International has adopted a policy on equal employer opportunity but they choose not to enforce it nor investigate it when complaints are raised.

Plaintiff respectfully request that the Court appoints a jury trail.

Plaintiff is seeking compensation for back pay, front pay, $5,000.00 for previous court fees, difference in pay, mental and physical anguish, embarrassment, slander, salary for 3 years, punitive damages, and other appropriate relief deemed necessary by the court.

I solemnly swear and affirm under penalties of perjury that the foregoing statements are true and correct to the best of my knowledge, information and belief.

Michelle McCray

Michelle McCray
1705 Seaton Street NW
Washington, DC 20009
(202) 588-0667

EEOC Form 161 (3/98)

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

# DISMISSAL AND NOTICE OF RIGHTS

To: **Michelle McCray**
**1705 Seaton Street, N.W.**
**Washington, DC 20009**

From: **Washington Field Office**
**1801 L Street, N.W.**
**Suite 100**
**Washington, DC 20507**

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR § 1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **10C-2004-00192** | **David Gonzalez, State & Local Coordinator** | **(202) 419-0714** |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

- ☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.
- ☐ Your allegations did not involve a disability as defined by the Americans with Disabilities Act.
- ☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.
- ☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge.
- ☐ Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.
- ☐ While reasonable efforts were made to locate you, we were not able to do so.
- ☐ You were given 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged.
- ☐ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.
- ☒ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.
- ☐ Other *(briefly state)*

## - NOTICE OF SUIT RIGHTS -

*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this Notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

Dana Hutter

**Dana Hutter,**
**Acting Director**

JUL 18 2005
*(Date Mailed)*

Enclosure(s)

cc: **Lisa Sherman**
**COMPASS GROUP**
**2400 Yorkmont Road**
**Charlotte, NC 28217**

05 2264

FILED

NOV 21 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Enclosure with EEOC
Form 161-B (3/98)

# INFORMATION RELATED TO FILING SUIT UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law. If you also plan to sue claiming violations of State law, please be aware that time limits and other provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS -- Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days of the date you *receive* this Notice.** Therefore, you should **keep a record of this date.** Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS -- Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: backpay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/00 to 12/1/00, you should file suit before 7/1/02 -- *not* 12/1/02 -- in order to recover unpaid wages due for July 2000. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA backpay recovery period.

**ATTORNEY REPRESENTATION -- Title VII and the ADA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE -- All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice.** (Before filing suit, any request should be made within the next 90 days.)

***IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE***

Exhibit A

I am writing to make a report about Michelle, Administrative Assistant, and the dispute we both had, that occurred on December 4th, 2003.

Early morning, John Tedesco requested me to work with Michelle on creating the food signs, to read the instructions for the lamination machine and to use the lamination machine for the food signs since it's both of our first time using it. He explained to me that this is a good idea to do this just in case if I am not at work, then Michelle would be expected to take over and handle this instead, using both of our same process.

As I checked to see if Michelle was in by her desk at around 10am but she wasn't by her desk until at around 10:15am and that's when I asked her to work with me in making the food signs and learning to do the lamination machine together. She asked me to give her a few minutes and by 10:45am, with feeling suspense in need to be at the Bistro instead due to short period of time preparing Lunch, Michelle asked me what needs to be done again. I repeatedly explained to her that John would like for me to work with her in making the food signs and to learn how to use the lamination machine together since I just got the instructions for it. Michelle seemed to be confused and repeatedly said that she's busy, at the same time, asked why she needs to make the food signs even though I am at work (present) and that I could do it instead. She also explained to me that the next time I am not at work; she would prefer to read the instructions instead because she's busy at the moment. She figured that I would be taking care of the food signs and handle the lamination machine on my own.

At this point, I felt that this whole situation that occurred may have been lack of communication and lack of understanding one's role when doing tasks. This was when I finally suggested her to talk to John if she's still confused and/or prefers to have a better/clearer explanation from John instead of me and she agreed.

05 2264

Then, she made the phone call to John and talked to him. I was unable to catch or following up as to what she was talking to John. I felt bit lost and waited patiently until she was finished talking to him but I could see that she raised her voice and talked

FILED

NOV 21 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

quickly over the phone with him. When she hung up, I asked her if she understands what needs to be done now and she said yes and explained to me that I am supposed to do the signs and learn how to do the lamination machine on my own and she will only handle this when I am off on every Tuesdays. I had no idea or was not sure how she got the information that I would be off on every Tuesdays, which I know I am not, due to unpredictable scheduling, so I explained to her that I may not be off on every Tuesdays, yet may be off at any day of the week. She said no and that I am still off on every Tuesdays so she would still prefer to take this over on every Tuesdays when I am (supposedly) off.

Finally, at this point after getting to nowhere, I felt that I did not deserve respect and team work from her and decided to handle the food signs and figure the lamination machine on my own. I became upset and felt that this whole situation was simple and it was just a request that I asked her to do, based on John's request but she made it very difficult for me. I walked away, feeling embarrassed that this had to happen and that she raised her voice where, obviously, some employees from the background overheard this. Also, I walked away in hopes that she would be able to figure it out on her own the next time when I am not at work and with knowing that she may or may not be doing this project the right way with no mistakes (if we had worked this out together in the first place.)

Kelly Carragher

12/05/03

**Flik** International Corp
Conference Center Management

3 International Drive
Rye Brook, NY 10573
1-866-690-8076

MEMORANDUM

To: Michelle McCray
From: David Kohlasch
Subject: Recap of Discussion
Date: December 5, 2003
Cc: Erik Buckholz

I cannot sign this write up because of its content, the inconsistency between the actual events and the write up. I will acknowledge that I do have a copy of this write up but will like to note that I totally disagree with why it lead to this and the actual write up.

The following is a recap of the incident that took place on Thursday December 4, 2003.

On Thursday December 4, 2003, Kelly Carragher, Assistant Bistro Manager, asked Michelle McCray to assist her in learning how to use the laminating machine. Kelly explained to Michelle that John Tedesco, Food and Beverage Manager, had asked her to talk to Michelle and have both of them to learn how to use the machine being that both would be using to help make signage for the Bistro Restaurant. This entire discussion took place in the Administrative Offices and could be heard by many staff.

For approximately 3-5 minutes, Michelle was very loud talking to Kelly telling her that she did not understand why John wanted both of them to learn how to use the machine. Kelly explained her understanding of John's request and Michelle either did not understand or did not agree.

Michelle then call John and ask why he wanted both Kelly and her to learn the machine. John explained his reasoning and Michelle argued with John on why she didn't agree.
After hanging up from John, Michelle continued to be very loud in the office and express her disagreement with John's decision. Michelle continued to be very loud to Kelly about it and was very unprofessional. Kelly walked away and was found crying because of Michelle's unprofessional behavior.

05 2264

Michelle is in violation of company policy. Michelle has violated numerous policies stated on page 20 of the employee handbook. Policies include the following:

- Failure to perform reasonable duties when assigned: Michelle was instructed to perform a duty and did so after much heated discussion with 2 managers.
- Conduct which the company feels reflects adversely a associate or the company: Michelle's unprofessional conduct was a major disruption within the offices that it took place along with challenging a management decision that was very upsetting to Kelly Carragher
- Performance which, in the company's opinion, does not meet the requirements of the position: Michelle has been instructed that her job is whatever a manager may ask of her and her failure and challenging of accomplishing a task does not meet the requirements of the position.

FILED
NOV 21 2005
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

This notice serves as a final written warning and Michelle will be subject to termination if this happens again.

P. 1

* * * COMMUNICATION RESULT REPORT ( FEB. 5.2004 5:32PM ) * * *

FAX HEADER: GUKCC

| FILE | MODE | OPTION | ADDRESS (GROUP) | RESULT | PAGE |
|---|---|---|---|---|---|
| 056 | MEMORY TX | | 917043291194735554 | OK | P. 1/1 |

REASON FOR ERROR
E-1) HANG UP OR LINE FAIL
E-2) BUSY
E-3) NO ANSWER
E-4) NO FACSIMILE CONNECTION

**Compass Group North American Division**
**Associate Status Change Document**

COMPASS

**Cost Center Number** 12829 **Sector** flik **Effective Date of Change** 02/06/2004

**Associate's Name** Hala Younes

**Associate's New Name**

**Personnel Number (from Payroll Register)** or **Social Security Number** 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

**FOR UNPAID ABSENCE (To determine eligibility, contact LOA Coordinator at 800-341-7763)**

**Start Date** **End Date**

Full-time salaried exempt associates are not required to submit time documentation in order to receive their bi-weekly paycheck; therefore these types of associates are on automatic pay. Associates will continue to receive wages unless Field Management reports their terminations or unpaid absences to the payroll department via a phone call to the Payroll Customer Service line at 888-295-7206.

05 2264

**ADDRESS CHANGE**

**Current Address** **Apt#** **City** **State** **Zip Code**

**New Address** **Apt#** **City** **State** **Zip Code**

**New Phone Number (if applicable)**

FILED
NOV 21 2005
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**TRANSFER (Please complete Job Code and Position Title below)**

**From Cost Center** 12829 **To Cost Center** 12833

**PROMOTION/DEMOTION/LATERAL MOVE (Please complete SALARY ADJUSTMENT section, if applicable)**

*Please use the new Compass job codes effective 7/1/2003. For more information, please reference your Job Code Changes Communication Packet.*

**Old Job Code** **Old Pay Grade** **Position Title** **Full Time** **Part Time**

**New Job Code** **New Pay Grade** **Position Title** **Full Time** **Part Time**

Exhibit D



# KELLOGG CONFERENCE HOTEL AT GALLAUDET UNIVERSITY

## Memorandum

**To:** Senior Staff
**From:** David Kohlasch
**Subject:** Staffing Update
**Date:** February 4, 2004

With everyone being so busy this week with Board of Trustees, Senior Staff Meeting is not being held, however, I want to update everyone on the Operations Review Meeting that took place with GU and on some staffing changes.

The Operations Review Meeting was successful and gave us a chance to share our plan with Gary Aller and Paul Kelly. In summary, we have a $300K shortfall in revenues through February and need to make this up over the last 7 months of the year. Keep in mind our year ends September 30, 2004. As a result of this challenge, we discussed our plan to achieve the $3.7M goal.

Part of our plan is to have Trisha Faulkner Christman work with us part time for 1 month to call every client that has been at the GUKCC over the last 2 years. Trisha is calling each client and passing on her findings and leads to Rhonda and Tyra. Trisha has many years of experience in the conference industry and is providing us a valuable service to help us achieve our goal.

We have also been given the approval to hire an additional Sales Manager. We are currently in the process of interviewing candidates and will have a Sales Manager on board within the very near future. This is a full time position. Please let Rhonda know if you have any potential candidates for the job.

In regards to our Accounting Department, we have restructured the Administrative Assistant position that is now vacant. The position is now an Accounting Manager role and is reporting directly to Paul Christman. Responsibilities will include assisting with the Accounts Payable, Accounts Receivable, Payroll and billing process.

Suzanne Duncan has been assisting Paul with this process over the last few weeks and will remain for 2 more weeks. Suzanne has been helping us catch up on the Accounts Receivable and documenting the Standard Operating Procedures for the Accounting Department.

05 2264

I am proud to announce that Hala Younes, Assistant Front Office Manager, will be transferring into the Accounting Manager role as of Friday 2/6/04. Hala will be reporting directly to Paul and please join me on congratulating Hala in her new role.

FILED
NOV 21 2005
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Exhibit E

Kellogg Conference Hotel
at Gallaudet University

# Memo

**To:** Michelle McCray

**From:** Paul B. Christman

**CC:** David Kohlasch

**Date:** November 6, 2003

**Re:** Job Description

---

Michelle,

Attached is your Job Description. This is a dynamic document and will be updated periodically along with your professional development. These job functions are not all inclusive, as there will be other tasks asked of you in the course of business, which must be completed.

If you have any questions or concerns, please do not hesitate to ask.

Paul

05 2264

FILED

NOV 21 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**FLIK International Corp**
**Job Description**

**Facility: Gallaudet University Kellogg Conference Center**
**Position Title: Administrative Assistant**
**Department: Administration**
**Date: October 30, 2003**

**I. Overall Responsibilities:**
Responsible for administrative functions at the Kellogg Conference Center with primary focus on accounting

**Work Relationships:**
Reports To: Controller
Interfaces: General Manager
Sales Department
Food and Beverage Department
Rooms Division
GUKCC Staff
Flik/Compass Corporate Offices

**II. Primary Job Functions:**

- Processing and input of all invoices for accounts payable into ReMAC Accounting Software
- Follow up with vendors in relation to any questions or outstanding concerns for invoices
- Processing Supplier Maintenance Request Forms for proposed new vendors
- Verify employee labor hours in ReMAC
- Enter approved Payroll Adjustments into ReMAC
- Print and distribute Employee Sign Off reports to department heads on Thursday and Friday.
- Prepare and distribute Paychecks every other Friday.
- Transmit Payroll and Accounting files to Charlotte every Friday.
- Processing and input of daily revenues from Visual 1 into ReMAC every morning.
- Follow up with Front Office Management in relation to any questions or outstanding concerns on settlements or charges
- Processing and input of catering postings into Visual 1
- Preparation of client invoices in Visual 1 Account Receivable
- Mailing and delivering of client invoices
- To attend staff meetings when applicable
- Telephone support when needed
- Distribution of miscellaneous correspondence when needed
- Maintaining cleanliness and organization of administrative offices
- To assist other Administrative and Sales Coordinator staff when requested
- Completion of weekly managers schedule by close of business Thursday
- To assist the Front Desk when needed
- To complete the daily signage for food service (Bistro)
- Assist other managers when requested and time permits

These job functions are not all inclusive and subject to change. There will be other tasks that are requested and must be completed.

**SKILLS, ABILITIES AND KNOWLEDGE REQUIREMENTS:**

- 4 Year college degree
- Proficient in Microsoft Office (Word, Excel, Power Point and Outlook)
- Proactive mindset to anticipate and support changes in our business
- Keep abreast of industry trends and share information with staff
- Exceptional customer service abilities

October 5, 2005

Tongii Kelly-Sunday
13009 Old Stage Coach Road
Laurel, MD 20708

Michelle McCray
1705 Seaton Street NW
Washington, DC 20009

Re: Hala Younes (Kellogg Conference Hotel)

Dear Michelle,

This letter is submitted as a true recollection of my day-to-day interactions with Mrs. Hala Younes. The name Hala Younes was first introduced to me by Mr. Said Elkhodary who represented Kellogg Conference Hotel as District Manager for Flik a management company within Compass Group. Later the name was announced by Mr. David Kohlasch – General Manager of Kellogg Conference Hotel. I was told by both gentlemen that Mrs. Younes had exceptional expertise and experience in the hospitality industry and could do great wonders to bring the front desk to peak operational standards so that I could be relieved from the physical aspect of the job and focus on the administrative side of the position. She was placed on such a high pedestal and noted that she was one of the individuals who helped Omni Shoreham rise to an impeccable level. Throughout the many conversations and coercions between both men, I was told to interview and hire Mrs. Younes immediately; I conducted an interview with Mrs. Younes for a position of Front Desk Supervisor, but either Mr. Kohlasch or Mr. Elkhodary completed the hiring process.

Mrs. Younes began her employment with Kellogg Conference Hotel during the month of October 2003, at which time she deemed herself Front Office Manager. This immediate fight for control was only the beginning of how she wanted herself to be placed on a peak. I showed Mrs. Younes her hire packet as it stated she was hired as front desk supervisor and that she reported directly to me as Front Office Manager. Within a very short time, I and other front office staff began to notice that Ms. Younes was having tremendous difficulties with her English both verbally and written. Whenever she was given an assignment, Mrs. Younes would ask other front desk clerks to compose letters on her behalf or she would copy daily notes left in the front desk log so that this flaw would not be apparent or she would request that only assignments be submitted via email so that "spell check" could detect some spelling/grammatical errors. I immediately approached Mr. David Kohlasch about my findings and he told me that I should take Mrs. Younes under my wings and give her the tutoring and guidance she needed to succeed, that he also noticed her communication flaws too. He told me that Mrs. Younes' success depended upon me giving her all the knowledge that I have in the industry as well as to teach her written and verbal communication skills. I spoke out and stated to Mr. Kohlasch that I am not an English tutor or instructor and why should I have to train someone who supposed to be the most qualified candidate for a supervisor position?

05 2264

FILED

NOV 21 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Having worked directly with Mrs. Younes for 4 months, I was able to see how she argued with guests and never admitted she was at fault, how she always wanted to be praised for accomplishments even when she had nothing to do with it, how she showed lack of concern towards her fellow co-workers and how she despised working the front desk shift and only wanted to be in the midst of Paul Christman (Accounting), Said Elkhodary (DM), & David Kohlasch (GM). Mrs. Younes even told me that she was hired at Kellogg for a supervisor position so that she could take my position and then move to other hotels that Flik Management were in the process of acquiring. Mrs. Younes confided in me that she did not have the knowledge or skills to be in the hospitality industry that she had received her certificate from Egypt in forestry/agriculture. She stated because of Mr. Said Elkhodary she was able to move into a management position as he wanted to help her to earn more income to build her personal lifestyle with her family. Mrs. Younes knew that within Kellogg Conference Hotel as long as Said Elkhodary and David Kohlasch were in existence she could manipulate staff and do what ever she wanted even to the point of her walking off the job, to be later promoted as Accounting Manager with a salary increase. The position was originally an Administrative Assistant position, but when guest and co-workers began to announce Mrs. Younces' many incompetencies, this is when Mrs. Younes was conveniently moved to accounting so that Mr. Kohlasch and Paul Christman could shield and protect her employment within the Flik industry. A prime example of how she did not reason is when a guest reported to her that a needle was left in the bed by a previous guest, and a child was now preparing to sleep in the bed and was pricked by the needle that resulted in bleeding. She individual reported the incident to Mrs. Younes, and she at first argued with the guest to later now giving them a coupon to the cafeteria for a bagel and coffee. She did not think or reason to write and incident report nor did she even reason that a contamination may have occurred and that she should advise the guest to seek medical treatment for any blood borne pathogens. When confronted with the incident by me she still believed she was right and argued the entire time until the issue was addressed by Mr. Daivd Kohlasch after receiving a formal letter that the guest was going to sue the company for how the issue was handled by Mrs. Younes representing Kellogg Conference Hotel.

In summary, my assessment of Mrs. Younes is that she is very manipulative, controlling, lacks respect towards females and minorities, does not fit the protocol of being employed as supervisor or any mid level management. During the time I worked with her, she did not know how to properly count even one dollar in coins which made complaints escalate more because she would not give guest proper payment and would constantly argue with guest when they tried to show her an error was made.

Tongii Kelly-Sunday

Exhibit G

10/10/03

| Date of Evaluation | Evaluation | No evaluation |
| --- | --- | --- |
| Oct 3 | Michelle McCray | Ms Claire Daniel |
| | | Charlotte D Ahay |
| | | Sharon Collins |
| | | Tongii Kelly |
| | | Casey Overton |

05 2264

FILED
NOV 21 2005
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Memo to Michelle McCray's file.

Michelle's performance to date has continued to fall short of expectation, which is outlined in the attached Job Description. There are concerns with her in the following areas:

1. Attitude – Michelle has shown resistance to doing tasks related to her job as exhibited last Friday, and on other occasions.
2. Follow Through – It took over a month to get her own computer set-up.
3. Time Management – Tasks which should take minimal time are taking an entire day - Phone Extensions List and Radios are just two examples.

Flik has made a significant investment towards Michelle's Professional Development

1. Visual One Training.
2. Front Desk Training.
3. Training by David (time).
4. Training by Paul Christman (time).
5. Training with Michelle Wiley – Wedding No-Show.

Furthermore, there have been several discussions with Michelle regarding her Professional Development, and she has expressed desire to progress in other areas. Compromises have been made to meet her needs or desires while totally getting away from the Team's needs, but this can no longer continue.

This position is 60-80% accounting, and therefore requires strong pc skills especially in Excel. Furthermore, since this position is an extension of the General Manager and Controller this person needs to exhibit professional communication skills and appearance at all times.

If immediate improvement is not seen in these areas of concern, then further disciplinary actions will be warranted, and could result in termination.

05 2264

FILED

NOV 21 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Exhibit I

Yahoo! My Yahoo! Mail

YAHOO! Mail Welcome, michellemccray2209 [Sign Out, My Account]

Search the web Search

Mail Home - Help

Mail | Addresses | Calendar | Notepad michellemccray2209@yahoo.com [Sign Out]

Check Mail | Compose

Mail Upgrades - Search Mail - Mail Options

Folders [Add]

- Inbox (98)
- Draft
- Sent
- Bulk (6) [Empty]
- Trash [Empty]

Free Credit Report in Seconds

FREE Sony DVD player - Details

Make Your Y! Mail a FREE Fax Machine

Previous | Next | Back to Messages

Printable View - Full Headers

Delete | Reply | Forward | Spam | Move to folder... | OK

This message is not flagged. [ Flag Message - Mark as Unread ]

**Subject:** RE: Recap of meeting on October 27, 2003
**Date:** Tue, 28 Oct 2003 15:44:30 -0500
**From:** "Buckholz, Erik" <Erik.Buckholz@exch.compass-usa.com> Add to Address Book
**To:** "Michelle McCray" <michellemccray2209@yahoo.com>

Sure.

We talked about the changes in the position you are currently in to meet the needs of the account which have changed from the date of the opening. We will be rewriting your job description to more accurately reflect those changes and the staffing changes which have taken place.

We discussed improving communication between David and Paul and yourself. This will require you to take a look at whets happening now and look for ways to make improvements and exploit successes.

We talked about how you can make your work day more productive. i.e. looking at what happened with the walkie talkies a few weeks ago and thinking how you need to be thinking about projects how long it is taking you and how you can improve production where needed. Look for opportunities to improve in these areas.

We were going to establish a training schedule for you to support the new job description. Paul and you will create and set that schedule, so you can become more independent.

We are going to give you a new hard copy of the job description.

We are going to look at the next 30 days to assess your performance and measure where you need improvements and help you make those where necessary.

Ill think about it and get back to you if I think of anything else.-Erik

-----Original Message-----
**From:** Michelle McCray [mailto:michellemccray2209@yahoo.com]
**Sent:** Tuesday, October 28, 2003 3:25 PM
**To:** Buckholz, Erik

05 2264

FILED

NOV 21 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Exhibit I

-----Original Message-----
**From:** Michelle McCray [mailto:michellemccray2209@yahoo.com]
**Sent:** Tuesday, October 28, 2003 3:25 PM
**To:** Buckholz, Erik
**Subject:** Recap of meeting on October 27, 2003

Good Afternoon,

Will you please send me a recap of what we talked (October 27, 2003) about concerning the meeting I had with David Kohlasch and Paul Christman (October 3, 2003) that resulted in me sending you a packet in reference to my concerns here at the Kellogg Conference Hotel.

Thank you.

Michelle McCray

---

Do you Yahoo!?
Exclusive Video Premiere - Britney Spears

Delete | Reply | Forward | Spam | Move...

Previous | Next | Back to Messages | Save Message Text

Check Mail | Compose | Search Mail | Search the Web

Copyright © 1994-2005 Yahoo! Inc. All rights reserved. Terms of Service - Copyright/IP Policy - Guidelines - Ad Feedback
NOTICE: We collect personal information on this site.
To learn more about how we use your information, see our Privacy Policy

**Michelle McCray**

**From:** <tongii.kelly@gallaudet.edu>
**To:** <rhonda.blake@gallaudet.edu>
**Cc:** <john.tedesco@gallaudet.edu>; <fred.lewis@gallaudet.edu>; <michelle.wiley@gallaudet.edu>; <Sonia.Latoison-Leach@gallaudet.edu>; <tyra.marshall@gallaudet.edu>; <paul.christman@gallaudet.edu>; <clarine.daniel@gallaudet.edu>; <michelle.mccray@gallaudet.edu>; <david.kohlasch@gallaudet.edu>
**Sent:** Tuesday, January 13, 2004 2:27 PM
**Subject:** Re: Many Thanks

Thanks too from the front desk for allowing us an opportunity to have a successful Front desk meeting on 1/12/04. There is no way it could have been pulled off without the support of each team member. Special thanks to Paul for overseeing the desk, Sonia for her excellent gift ideas & willingness to go the extra mile always for my team, ~~Michelle M for always willing to help with no questions asked~~, My best Chef in the world along with his staff & crew for an excellent presentation of food choices, John for always bubbling with style, Rhonda for allowing us to use her skills when necessary, Hala for giving that extra nudge, last, but not least to the World's Greatest Boss - David for always being there to support, encourage, and just being yourself. Without you guys there will not be a front desk team.

Tongii

On Tue, 13 Jan 2004 14:08:36 -0500, "Rhonda Blake" wrote:

05 2264

FILED

NOV 2 1 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Exhibit J



Exhibit 5



Exhibit J



I really appreciate it.

Thank you for holding it down for me yesterday!

[signature]

Exhibit J




The star Program
The star I received for Great People

Exhibit J

2

# Great People

**Why should Be-A-star be important to me?**

Be-A-star offers many opportunities and encourages you to be excited about the valuable and unique role you play in the success of your operation. With a positive 'can-do' attitude, you make great things happen.




A Quest is a journey or trip. Together, you and your co-workers encourage and inspire each other on your journey every day. Everything you do is important. As Star 2 focuses on Great People, you and your team will have an exciting journey!

La Búsqueda es un viaje. Juntos usted y sus compañeros de trabajo se alientan y se inspiran todos los días en su viaje. Todo lo que usted hace es importante. Con el enfoque de Estrella 2 en Gran Gente, usted y su equipo tendrán un viaje emocionante!

# Gran Gente

**¿Por qué debe ser importante para mí Be-A-star (Sea-una-estrella)?**

Be-A-star ofrece muchas oportunidades y le alienta para que se entusiasme en su papel valioso y único por el éxito de su unidad. Con una actitud positiva usted hace que cosas grandes

Exhibit J

The star Program

The star I received for Great Service



Exhibit J

# Great Service

## Why is Be-A-star important to my operation?

Be-A-star allows us to continue to build our future as the leader in the foodservice industry. Every day you have the opportunity to provide Great Service through customer and client satisfaction.




# Gran Servicio

## ¿Por qué Be-A-star (Sea-una-estrella) es importante para mi unidad?

Be-A-star nos permite continuar a construir nuestro futuro como líder en la industria del servicio alimenticio ofreciendo Gran Servicio por medio de satisfacción




Exhibit J

Michelle -

* I need 1 week schedule - not 2

* See the Boxes in front of Charlottes desk - Have them removed please.

* Please have managers home phone list for me by no later than Monday

* Call me on cell if needed -
571-334-2035

Thanks and Keep up the goodwork -

David K.